IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edwin Jay Randall, ) | C/A No. 0:08-3594-HFF-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| Michael Pettiford; J. ComStock; Darlene Buchanan; ) | |
| G.W. Branch, III; D. Schantz; L. Cunningham; ) | |
| Scott Dodrill; Harrell Watts; Jerry C. Martinez; ) | |
| Harry Lappin; and Darlene Drew, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff, Edwin Jay Randall ("Randall"), a self-represented federal prisoner, filed this action asserting that the defendants violated his civil rights. Essentially, Randall seeks monetary compensation based on the defendants' alleged violation of his rights to due process of law during the course of a disciplinary proceeding stemming from an incident that occurred at FCI-Bennettsville, where he was formerly housed.¹ This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6). (Docket Entry 37.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Randall of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 38.) Randall filed a response in opposition to the defendants' motion. (Docket Entry 48.) Additionally, Randall filed an Amended Complaint in

---

¹ Because Randall's disciplinary conviction for this offense was ultimately expunged, this action is not barred by Edwards v. Balisok, 520 U.S. 641 (1996) (applying the rule of Heck v. Humphrey, 512 U.S. 477 (1994), to prison disciplinary convictions).

which he added facts and attachments to his initial Complaint.[2] Having carefully considered the parties' submissions, the court finds that the defendants' motion should be granted in part and denied in part.

## BACKGROUND

Randall was formerly housed at FCI-Bennettsville near Bennettsville, South Carolina. While there, Randall received a disciplinary charge stemming from the alleged unauthorized use of a cell phone. The charge was re-written twice, and a disciplinary hearing was held approximately six weeks after the initial charge was made. Randall unsuccessfully appealed his disciplinary conviction through the prison grievance process, then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania. After the petition was filed, Bureau of Prisons officials expunged Randall's disciplinary conviction.

Randall now seeks monetary damages for violation of his due process rights relating to his disciplinary proceedings. He names the following defendants from FCI-Bennettsville: Michael Pettiford, the former warden; Darlene Drew, the current warden; J. ComStock, a Disciplinary Hearing Officer; Darlene Buchanan, the Executive Assistant and Camp Administrator; G.W. Branch, III, a former correctional officer; and Donolus Schantz, a Lieutenant. Additionally, he names the following defendants from FCI-Allenwood in Pennsylvania, where he was subsequently incarcerated: Jerry Martinez, Warden; and L. Cunningham, an attorney at FCI-Allenwood. Finally, he names as additional defendants Harry Lappin, Director of the Federal Bureau of Prisons ("BOP"); Scott Dodrill, Regional Director for the Northeast Region of the BOP; and Harrell Watts, the National Inmate Appeals Administrator in the Office of the General Counsel. (Am. Compl., Docket Entry

---

[2] The court allowed the defendants ten days to supplement their motion to dismiss following the filing of Randall's Amended Complaint. (Docket Entry 53.) The defendants elected not to do so.

47-3; Docket Entry 37 at 1-2.) Following receipt of the defendants' motion, Randall conceded that Defendants Drew, Lappin, Martinez, and Cunningham are not proper parties to this action and agreed that his claims against them should be dismissed. (Docket Entry 48 at 4, 26.) He also appears to concede that his good time credits have now been restored and, in response to the defendants' construction of his Complaint as seeking a transfer to another prison facility, he asserts that he is not seeking a transfer to another institution. (Id. at 9, 13, 26.)

## DISCUSSION

### A. Subject Matter Jurisdiction

The defendant has moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The defendants contend that the court lacks subject matter jurisdiction over Randall's claims because of the doctrine of sovereign immunity. To the extent Randall seeks damages against the defendants in their official capacities, they are indeed protected by sovereign immunity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies or officials in their official capacity"). Randall's allegations make clear,

however, that he is asserting claims against the defendants in their individual capacities. (Am. Compl., Docket Entry 47-4 at 3-6; Docket Entry 48 at 2-4.). Although the defendants assert that because the defendants were acting within the scope of their employment the court should consider Randall's claim to be official capacity claims only, which would be barred by sovereign immunity, the court rejects the notion that any claim by a prisoner that stems from a prison official's employment is *per se* an official capacity claim. See Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971) (establishing a remedy for plaintiffs alleging constitutional violations by federal officials to obtain monetary damages in suits against federal officials in their individual capacities); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government.").

**B.    Personal Jurisdiction**

As noted above, Randall does not oppose dismissal of Defendants Lappin, Martinez, and Cunningham for lack of personal jurisdiction. He contends, however, that Defendants Dodrill and Watts have sufficient contacts in South Carolina for this court to exercise personal jurisdiction over them. The court disagrees.

When a court addresses an issue of personal jurisdiction based on "motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). For personal jurisdiction to exist over a non-resident defendant, jurisdiction must be authorized by the forum state's long-arm statute and it must not violate the Due Process Clause. South Carolina's long-arm statute has been held to extend jurisdiction "to the outer limits" of due process. Fed. Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 657 n.2 (4th Cir. 1989). Therefore, the question is whether exercising

personal jurisdiction over the defendant is constitutionally permissible. This due process analysis differs depending on whether the personal jurisdiction is based on either general or specific jurisdiction. When a matter "does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (internal quotations omitted). The defendant's contacts must be "continuous and systematic" such that he would expect to be subject to suit on any claim in that forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). When the matter arises out of a defendant's activities with the forum state, specific jurisdiction may be exercised. In these cases, "a 'relationship among the defendant, the forum, and the litigation' is the essential foundation." Id. at 414 (quoting Shaffer v. Hietner, 433 U.S. 186, 204 (1977). However, due process requires that the defendant purposely established minimum contacts with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations and citation omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

Randall alleges that Defendant Dodrill, as the Regional Director for the northeast region of BOP, is responsible for reviewing and signing all regional appeals. Randall contends that Dodrill reviewed his appeal of his disciplinary conviction and denied it. With regard to Defendant Watts, Randall asserts that Watts, as the National Inmate Appeals Administrator in the Office of the General Counsel, reviewed his national grievance response concerning his disciplinary conviction. Randall argues that these defendants purposefully and regularly conduct activities in this state and that their actions in failing to vacate and expunge his disciplinary conviction violated his due process rights.

The court finds that the contacts of Defendants Watts and Dodrill with South Carolina are insufficient to establish personal jurisdiction. The only personal involvement alleged with regard to these defendants is that they handled Randall's appeals, which they did from their offices in Pennsylvania and Washington, D.C. This limited contact is insufficient to establish personal jurisdiction in this forum. See McKubbin v. Pettiford, C/A No. 8:08-3248-HMH-BHH, 2009 WL 3245486, *4-*5 (D.S.C. Oct. 1, 2009) (holding that Defendant Watts and the southeast regional director of BOP had insufficient contacts with South Carolina to permit the district court to exercise personal jurisdiction over them when their only personal involvement was handling the plaintiff's appeal); Starling v. United States, C/A No. 8:08-888-PMD-BHH, 2009 WL 3380919 (D.S.C. May 12, 2009) (rejecting the argument that a BOP defendant's decision on a plaintiff's appeal that occurred outside of the forum state was sufficient to establish personal jurisdiction). Accordingly, Randall's claims against Defendants Watts and Dodrill must also be dismissed.

**C.     Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

1.  **Supervisory Liability**

Defendants Pettiford, Drew, and Buchanan assert that Randall's allegations do not assert a plausible claim against them because they rest solely on their roles as supervisors. In response, Randall does not oppose the dismissal of Defendant Drew. (Docket Entry 48 at 26.)

The United States Supreme Court recently addressed the pleading requirements in connection with a claim against an official who is sued because he or she is a supervisor of others who allegedly violated a plaintiff's constitutional rights. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The Court began by recognizing the long established rule that liability based upon the doctrine of respondeat superior does not lie in a Bivens action. Id. at 1948. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." Id. The Iqbal Court clearly held that a supervisor's mere knowledge and acquiescence in his or her subordinate's unconstitutional conduct is insufficient to plead a constitutional claim; rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.

As the Iqbal Court observed, because masters do not answer for the torts of their servants in Bivens and § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).

Applying these principles to the allegations raised by Randall, the court finds that, as more fully discussed below, Randall has made sufficient allegations that Defendants Pettiford and Buchanan personally participated in the acts that he alleges constituted a violation of his constitutional due process rights. (See Am. Compl., Docket Entry 47 at 3; Resp. in Opp. of Mot. to

Dismiss, Docket Entry 48 at 7, 24.) Accordingly, these defendants are not entitled to dismissal on the ground that they are sued merely as supervisors.

### 2. Allegations of Due Process Violations

The defendants also argue that Randall has failed to meet the requisite pleading standard of Rule 8. Again, the court disagrees.

As to Defendants Pettiford, ComStock, Branch, Schantz, and Buchanan, Randall has pled sufficient facts to state a claim for relief that rises above the speculative level and is plausible on its face. Rather than assert conclusory statements that he was denied due process, Randall alleges facts and provides documentation attached to his Complaint and Amended Complaint relating to specific acts that these defendants took in connection with his disciplinary proceedings. In Randall's Amended Complaint, he alleges that (1) Defendant Pettiford is responsible for purposely ordering that one of Randall's witnesses, who would have provided exculpatory testimony, be transferred prior to Randall's disciplinary hearing, (2) Defendant ComStock, the disciplinary hearing officer, collaborated with Defendant Schantz, the charging officer, in repeatedly rewriting the incident report, thus depriving Randall of his right to an impartial decision maker, (3) Defendant Buchanan requested that Randall's hearing be postponed and purposely ordered that Randall's exculpatory witness be transferred prior to the hearing, and (4) Defendant Branch altered an exhibit to indicate that Randall had waived the witness request. (See Am. Compl., Docket Entries 47 & 47-4.) Accepting those facts as true, the court cannot say as a matter of law that they fail to state a plausible claim for a due process violation pursuant to Bivens. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974) (stating that due process entitles an inmate to several rights prior to depriving him of a protected liberty interest, including, among others, the limited right to call witnesses and an impartial tribunal).

Nor can the court say at this juncture that these defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818 , 821.

Liberally construing Randall's Amended Complaint, Randall avers facts that, taken as true, plausibly state a claim that the defendants did not provide him due process of law during his disciplinary proceedings as required by Wolff v. McDonnell, 418 U.S. 539 (1974). Although the defendants contend that the Wolff requirements were satisfied, Randall disputes some of the defendants' assertions in their brief regarding the procedures surrounding his disciplinary conviction. For example, Randall disputes as a factual matter the defendants' assertion that the witness he requested was transferred for a legitimate penological reason. See Wolff, 418 U.S. at 566. Moreover, Randall further alleges that two of the defendants, Pettiford and Buchanan, transferred to another facility a prisoner that Randall initially identified as a witness and who would have exonerated Randall. Randall avers that the defendants transferred this witness to another facility so that he could not testify on Randall's behalf at his hearing, and that the delay in holding Randall's hearing permitted them to accomplish this. At the Rule 12(b)(6) stage, the court has no affidavits before it and cannot say as a matter of law that Randall was provided the due process required by

Wolff. The defendants, of course, may be able to show that he was; on this record, the court can only determine that Randall has asserted a plausible claim.

Taken in the light most favorable to Randall, the facts alleged show that the defendants' conduct violated his constitutional rights to due process. Moreover, the due process requirements of Wolff have long been clearly established. Consequently, the court cannot say at this stage, taking the facts alleged as true, that the defendants are entitled to qualified immunity.

The defendants further appear to assert that even if Randall's constitutional due process rights were in fact violated, he has suffered no injury because the conviction was ultimately expunged and his good time credits were restored. In response, Randall alleges that he suffered injury as a result of the defendants' violation of his due process rights in at least the following ways: (1) he was subject to disciplinary segregation for four months, a sanction that cannot be restored or undone, and (2) as a result of his disciplinary conviction, he was transferred to another prison facility where he enjoys fewer privileges that he had at FCI-Bennettsville. Randall himself appears to acknowledge he has no constitutionally protected interest either to be in the general prison population or to be classified at any particular security status; thus, he does not appear to contend that these two events themselves constituted a violation of his due process rights. He asserts, however, that these allegations show that he suffered an actual injury as a result of the defendants' violating his due process rights in other ways.

The defendants also assert that Randall is precluded from recovering damages pursuant to 42 U.S.C. § 1997e(e). This provision prohibits a prisoner from recovering damages for mental or emotional injury when he has not shown any physical injury.

Neither of the defendants' damages arguments appear to limit Randall's ability to recover at least nominal damages for a violation of due process. Cf. Edwards v. Balisok, 520 U.S. 641

(1997) (suggesting that a prisoner whose disciplinary conviction is overturned may be able to recover at least nominal damages for a due process violation); Shigemura v. Duft, No. 06-1258, 2006 WL 3798747 (7th Cir. Oct. 30, 2006) (unpublished) (affirming the award of nominal damages to a prison inmate who sued prison officials under § 1983 for violating his due process rights); Harris v. Lappin, No. EDCV 06-00664 VBF (AJW), 2009 WL 789756, *13-*14 (C.D. Cal. Mar. 19, 2009) (unpublished) (denying a motion to dismiss with regard to a prisoner's § 1983 claims seeking damages for denial of due process to the extent those claims applied to disciplinary hearings that were expunged). Accordingly, the defendants do not appear to be entitled to dismissal on this basis.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motion to dismiss (Docket Entry 37) be granted in part and denied in part. Randall does not oppose the dismissal of Defendants Drew, Lappin, Martinez, and Cunningham. With regard to Defendants Dodrill and Watts, the court finds that Randall's claims should be dismissed because this court lacks personal jurisdiction over those defendants. Thus, as to Defendants Drew, Lappin, Martinez, Cunningham, Dodrill, and Watts, the defendants' motion should be granted. With regard to the remaining defendants, Pettiford, Buchanan, ComStock, Schantz, and Branch, the court recommends that the motion be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 19, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).